UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MED-PLUS, INC.,

                        Plaintiff,

-against-

AMERICAN CASUALTY CO. OF READING, PA,
d/b/a CNA,

                        Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**16-CV-2985 (NGG) (JO)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Med-Plus, Inc., initiated this diversity action against Defendant American Casualty Company of Reading, PA, with whom Plaintiff holds a commercial general liability insurance policy. (Compl. (Dkt. 1).) Plaintiff asserts a claim for breach of contract and seeks a declaratory judgment entitling Plaintiff to select independent defense counsel in a separate ongoing lawsuit, Abbott Labs. v. Adelphia Supply USA, No. 15-CV-5826 (CBA) (LB) (E.D.N.Y.) (the "Underlying Action"). Pending before this court are Defendant's motion to dismiss the action and Plaintiff's cross-motion for partial summary judgment. (Def. Mot. to Dismiss (Dkt. 19); Pl. Cross-Mot. for Partial Summ. J. (Dkt. 20).) For the reasons stated below, the court DENIES Defendant's motion and GRANTS Plaintiff's cross-motion.

## I. BACKGROUND

All facts summarized in this section are undisputed. (See Pl. R. 56.1 Statement ("Pl. 56.1") (Dkt. 22); Def. Resp. to Pl. 56.1 ("Def. 56.1") (Dkt. 25).) Plaintiff is a New Jersey corporation that conducts a medical supply business throughout the United States. (Def. 56.1 at 1-2.) Plaintiff was a named insured in a commercial general liability insurance policy

1

(the "Policy") issued by Defendant, effective from December 8, 2014, to December 8, 2015. (Id. at 2; see also Ex. A, Compl. ("Policy") (Dkts. 1-3 to -5).)

**A. The Underlying Action**

On October 9, 2015—i.e., during the Policy's coverage period—the Underlying Action was commenced in this district by Abbott Laboratories and certain affiliated entities ("Abbott"). (Compl. (Abbott Dkt. 1).) Abbott sells medical equipment for diabetic patients, and alleges that various medical supply companies conspired to import diverted international diabetes equipment for sale in the United States. (Id. ¶¶ 2-4.) In the original complaint, Abbott asserted claims including trademark infringement, fraud, racketeering, and unfair competition. (Id. ¶ 1.)

Med-Plus was not initially named as a defendant in the Underlying Action, but was added as a defendant in the first amended complaint, filed on November 20, 2015. (1st Am. Compl. (Abbott Dkt. 156).) Med-Plus appeared in the Underlying Action in December 2015, and was represented by Stern & Schurin LLP, the same counsel representing Plaintiff in the instant action. (Not. of Appearance (Abbott Dkt. 228).) In early March 2016, Plaintiff notified Defendant of the pending "trade dress" claim in the Underlying Action, and Defendant responded that none of the claims in the Abbott first amended complaint were covered under the Policy. (Def. 56.1 at 4-5.)

Abbott filed a second amended complaint (the "Abbott SAC") on March 28, 2016, which modified the substance of its trade dress claim against Med-Plus and other defendants. (Abbott SAC (Abbott Dkt. 307).) The Abbott SAC seeks compensatory and punitive damages, among other forms of relief. (Id. at 155-56.)

**B. Defendant's March 30, 2016, Letter**

Plaintiff notified Defendant of the amendment the same day it was filed. (Def. 56.1 at 5-6.) On March 30, 2016, Defendant sent a letter (the "March 30 Letter") stating that

2

Defendant "agree[d] to defend Med-Plus [] with respect to this matter subject to a full reservation of rights." (Mar. 30, 2016, Ltr. from Pamela Ellingson to Roger Mezhibovsky ("Mar. 30 Ltr.") (Dkt. 23-6) at 2.) Defendant explained that the Policy "applies to liability for damages because of 'personal and advertising injury,'" subject to certain exclusions, and concluded that the Abbott SAC "does potentially allege a claim for trade dress infringement arising out of [Med-Plus's] advertisement." (Id. at 2-3.) Defendant's reservation of rights "include[d] the right to file a declaratory judgment action to determine the parties' rights and obligations, the right to withdraw from the defense, and the right to seek reimbursement of defense payments." (Id. at 3.)

With regard to defense costs and selection of counsel, the March 30 Letter stated the following:

> [W]hen a complaint includes both covered and uncovered claims[,] New Jersey law requires that the insurer pay the costs of the covered claims, but not the costs for defending or prosecuting uncovered claims. Thus, when an insurer is faced with an underlying complaint involving covered [and] uncovered claims, . . . [the insurer] must attempt to negotiate a fair allocation of defense costs with the insured.
>
> We have determined that five of the thirteen causes of action in the SAC potentially allege a trade dress infringement claim covered under the subject policy. The remaining eight causes of action are not covered . . . .
>
> [W]e propose that [American Casualty] pay 5/13 of the defense expense and Med-[Plus] pay the remaining 8/13. [American Casualty] is willing to have Stern & Schurin LLP continue as defense counsel on your behalf. Please let us know if you are in agreement with these terms or if you would like to discuss them further.

(Id. at 5-6.)

3

### C. The Initiation of This Action

On June 9, 2016, Plaintiff filed the instant Complaint, asserting diversity jurisdiction under 28 U.S.C. § 1332. (Compl. ¶ 5; see also id. ¶ 10 (alleging that Defendant has a principal place of business in Illinois).) Plaintiff asserts a cause of action for breach of contract and seeks declaratory judgment.[1] (Id. ¶¶ 27-37.) Plaintiff's counsel wrote to Defendant that same day, stating: "As previously expressed to you, Med Plus cannot accept the terms and rates that were offered by [American Casualty]. Frankly, we would like to resolve this . . . , but if we cannot, we will move forward with service of the Complaint that has been filed." (June 9, 2016, Email from Steven Stern to Pamela Ellingson (Dkt. 23-7).)

### D. Subsequent Communication Between the Parties

On June 28, 2016, Defendant sent a letter stating that American Casualty "agrees to defend and indemnify its insured," Med-Plus, "against all causes of action" in the Underlying Litigation. (June 28, 2016, Ltr. from Pamela Ellingson to Steven Stern (Dkt. 23-8) at 1.) Defendant also stated "that punitive damages and damages in excess of the policy limit, claims that are excluded by public policy and policy language or by Code or Statute, do not create a conflict of interest." (Id. at 2.) Defendant instructed that "[d]efense of Med-Plus, Inc. will now be transferred" to an attorney selected by Defendant. (Id.)

Plaintiff responded on June 30, 2016, to "acknowledge and confirm" Defendant's position that it would "defend and indemnify" Plaintiff. (June 30, 2016, Ltr. from Steven Stern to Pamela Ellison (Dkt. 23-9) at 1.) Plaintiff objected, however, that "a claim for punitive damages does indeed create a conflict of interest which entitles Med Plus to select its own independent counsel which must be paid for by" Defendant. (Id. at 1-2 (citations omitted).)

---

[1] Plaintiff construes its request for declaratory judgment as a second cause of action. (See Compl. ¶¶ 34-37.) Declaratory judgment is a remedy, however, not a freestanding cause of action. See 28 U.S.C. § 2201.

4

In a July 6, 2016, email, Defendant stated that it "agrees to defend and indemnify Med-Plus against all causes of action and damages sought in the Abbott complaint, up to the available limits of the policy, <u>without reservation</u>," and once again stated its intention to appoint new counsel for Med-Plus. (July 6, 2016, Email from Charles Carluccio to Steven Stern (Dkt. 23-10) (emphasis added).)

## II. DISCUSSION

Defendant moves to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and also for failure to state a claim upon which relief may be granted under Rule 12(b)(6). Plaintiff moves for partial summary judgment on the issue of whether Plaintiff is entitled to select independent counsel in the Underlying Action, with reasonable costs paid by Defendant.

The court finds an ongoing actual controversy, and therefore denies Defendant's 12(b)(1) motion. The court construes Defendant's 12(b)(6) motion as a motion for summary judgment, and adjudicates it simultaneously with Plaintiff's cross-motion for summary judgment. The court finds that the potential for punitive damages in the Underlying Action creates a conflict of interest that entitles Plaintiff to select independent counsel. The court rejects Defendant's arguments regarding Stern & Schurin's eligibility to be selected as independent counsel, while recognizing that such arguments may potentially be raised at another time or in another forum.

### A. Subject Matter Jurisdiction

1. <u>Legal Standards</u>

   a. *Declaratory Judgment*

"In a case of actual controversy within its jurisdiction," a district court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Federal Rules of Civil Procedure "govern the procedure for obtaining a

5

declaratory judgment," as they do other civil actions. Fed. R. Civ. P. 57. "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Id. For the purpose of establishing subject matter jurisdiction, "a complaint seeking a declaratory judgment is to be tested . . . as if the party whose adverse action the declaratory judgment plaintiff apprehends had initiated a lawsuit against the declaratory judgment plaintiff."[2] Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc., 697 F.3d 59, 68 (2d Cir. 2012) (quoting Fleet Bank, N.A. v. Burke, 160 F.3d 883, 886 (2d Cir. 1998)).

### b. Mootness

"Article III restricts federal courts to the resolution of cases and controversies. That restriction requires that the party invoking federal jurisdiction have standing—the personal interest that must exist at the commencement of the litigation." Carter v. HealthPort Techs., LLC, 822 F.3d 47, 55 (2d Cir. 2016) (alterations omitted) (quoting Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008)). "But it is not enough that the requisite interest exist at the outset. 'To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" Davis, 554 U.S. at 732-33 (quoting Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997)).

If, at any point, a court discerns the absence of any actual, ongoing controversy, the court must dismiss the action as moot. See, e.g., Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co., Inc., No. 15-CV-07063 (JGK), 2017 WL 945189, at *1 n.1 (S.D.N.Y. Mar. 9, 2017) (dismissing as moot a claim for declaratory judgment regarding

---

[2] This "core principle" was developed with regard to federal-question jurisdiction, but "has been extended to the diversity jurisdiction context as well." Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc., 697 F.3d 59, 68 (2d Cir. 2012) (collecting cases).

6

an arbitration clause because, after the filing of the complaint, the "defendants stated that they will not seek to enforce the arbitration clause"). But see Fed. Election Comm'n v. Wis. Right to Life, Inc., 551 U.S. 449, 462 (2007) (noting the "established exception to mootness for disputes capable of repetition, yet evading review").

*c. Dismissal for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)*

"A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." Carter, 822 F.3d at 56. "When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of . . . the complaint and exhibits attached to it . . . , [t]he task of the district court is to determine whether the Pleading alleges facts that affirmatively and plausibly suggest" that jurisdiction is proper. Id. (alterations, internal quotation marks, and citations omitted).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." Id. at 57 (citations omitted). If the defendant's evidence exposes a potential jurisdictional defect, "the plaintiffs will need to come forward with evidence of their own," though they "are entitled to rely on the allegations in the Pleading if the evidence proffered by the defendant . . . does not contradict plausible allegations that are themselves sufficient to show standing." Id. "If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing." Id.

2. Analysis

Defendant's motion to dismiss for lack of jurisdiction relies on multiple evidentiary submissions documenting communication between the parties regarding the Underlying Action. (See Def. Mem. in Supp. of Def. Mot. ("Def. Mem.") (Dkt. 19-1).) Therefore, the court will analyze Defendant's Rule 12(b)(1) motion as a factual attack on jurisdiction, to be assessed based on all material evidence. See Carter, 822 F.3d at 56-57. The court finds that subject

7

matter jurisdiction is proper with regard to Plaintiff's request for declaratory judgment, and accordingly denies Defendant's Rule 12(b)(1) motion.

Defendant does not appear to dispute that jurisdiction existed at the time the Complaint was filed. Rather, Defendant emphasizes that, since that time, Defendant has agreed to "indemnify Med-Plus for all claims and damages up to the limits of the [Policy]—without any reservation of rights on any issue." (Def. Mem. at 4.) On that basis, Defendant asserts that "there is no live controversy for the Court to decide, and American Casualty is entitled to proceed with the experienced defense counsel it has selected to represent Med-Plus in the Abbott case."[3] (Id.) Though Defendant's briefing never uses the word "moot," Defendant's argument is properly construed as asserting a lack of subject matter jurisdiction on grounds of mootness. Defendant is mistaken.

It is clear from the parties' communications that Defendant asserts a right to select Plaintiff's counsel in the Underlying Action, while Plaintiff asserts a right to proceed with its chosen counsel of Stern & Schurin. In the March 30 Letter, Defendant itself reserved "the right to file a declaratory judgment action to determine the parties' rights and obligations" under the Policy. (Mar. 30 Ltr. at 3.) Since then, Defendant has purported to withdraw all reservations, but only in connection with Defendant's disputed representations that (1) the possibility of punitive damages in the Underlying Action does not create a conflict of interest, and

---

[3] Plaintiff accurately states that "[a] determination of whether or not there is a 'justiciable controversy' under the Declaratory Judgment Act, 28 U.S.C. § 2201, must necessarily be made as of the date of the filing of the Complaint." (Pl. Mem. in Supp. of Pl. Cross-Mot. & in Opp'n to Def. Mot. (Dkt. 21) at 7 (citations omitted).) Plaintiff appears to argue, however, that Defendant's motion should be denied on the basis that its argument "is premised exclusively on facts and changes to its position that occurred after Med Plus had already filed its Complaint" in this action. (Id. at 8.) Plaintiff has erroneously conflated two jurisdictional doctrines. "Diversity jurisdiction, once established, is not defeated by the addition of a nondiverse party to the action." Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991) (emphasis added). Any federal action, however, may be mooted if events subsequent to the filing of the complaint deprive the plaintiff of any continuing personal stake in the outcome. Davis, 554 U.S. at 732-33.

8

(2) Defendant therefore has the right to select Plaintiff's counsel. There is thus an "actual controversy" for the purpose of 28 U.S.C. § 2201(a).

Defendant cites a single case in support of its jurisdictional argument, a District of Delaware decision that found unripe a request for declaratory judgment in connection with an ongoing indemnification dispute. (See Def. Mem. at 3 (discussing Hartford Fire Ins. Co. v. InterDigital Commc'ns Corp., 464 F. Supp. 2d 375 (D. Del. 2006)).) Even if this case had precedential value, it would offer no support for Defendant's argument. Analyzing Pennsylvania law, the Hartford Fire court explained that "[t]he insurer's duty to defend an insured is a separate and distinct obligation from the insurer's duty to indemnify the insured. The duty to indemnify is a narrower duty, and arises only when the insured is determined to be liable for damages within the coverage of the policy." Hartford Fire, 464 F. Supp. 2d at 378 (emphasis added) (internal quotation marks and citations omitted).[4] In that case, the court dismissed the indemnification claim as unripe, but permitted "the question of [the insurer's] duty to defend [to] go forward," noting that a finding for the insurer on that issue would "eliminate the issue of indemnity." Id. at 382.

In this case, Plaintiff similarly seeks a declaration of the parties' respective rights regarding the selection of counsel in the Underlying Action, a component of Defendant's duty to defend. There is a live controversy. Accordingly, Defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

---

[4] See also, e.g., Ansonia Assocs. Ltd. P'ship v. Pub. Serv. Mut. Ins. Co., 692 N.Y.S.2d 5, 7 (N.Y. App. Div. 1999) ("The insurer's obligation to provide its insured with a defense is broader than its duty to indemnify the insured for loss." (citing Goldberg v. Lumber Mut. Cas. Ins. Co., of N.Y., 77 N.E.2d 131, 133 (N.Y. 1948))).

## B. Legal Standards for Cross-Motions on the Merits

### 1. Motion to Dismiss for Insufficient Pleadings Under Rule 12(b)(6)

To defeat a Rule 12(b)(6) challenge, "a complaint must plead specific facts sufficient to support a plausible inference that the defendant is liable for the misconduct alleged. While 'the plausibility standard is not akin to a probability requirement, it asks for more than a sheer possibility that a defendant has acted unlawfully.'" Doe v. Columbia Univ., 831 F.3d 46, 54 (2d Cir. 2016) (internal citations and alterations omitted) (quoting Iqbal, 556 U.S. at 678).

"On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." Littlejohn v. City of New York, 795 F.3d 297, 306 (2d Cir. 2015) (citation omitted). However, this leniency is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). As a general rule, courts "do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim." Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 202 (2d Cir. 2013) (citation omitted). "Rather, where matter outside the pleadings is offered and not excluded by the trial court, the motion to dismiss should be converted to a motion for summary judgment." Id. at 202-03 (citing Fed. R. Civ. P. 12(d)). Before ordering such a conversion, the court should ensure that "[a]ll parties [are] given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

### 2. Motion for Summary Judgment Under Rule 56

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find

for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

"In making this determination, the Court 'must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y., 822 F.3d 620, 631 n.12 (2d Cir. 2016) (quoting Beyer v. Cty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008)). "Conclusory allegations, conjecture, and speculation," however, "are insufficient to create a genuine issue of fact." Joseph v. N. Shore Univ. Hosp., 473 F. App'x 34, 36 (2d Cir. 2012) (summary order) (quoting Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003)). If "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the movant is entitled to summary judgment. El-Nahal v. Yassky, 835 F.3d 248, 252 (2d Cir. 2016) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

**C. Choice of Law**

The parties initially briefed the cross-motions under the assumption that New Jersey law governs all issues in this case, but neither party cited any law in support of that assumption. The court therefore ordered supplemental briefing on choice of law. (See Mar. 16, 2017, Order (Dkt. 30).) Plaintiff's supplemental memorandum "submits that New York law should be applied to the particular issues to be considered in the parties' cross motions." (Pl. Suppl. Mem. re Choice of L. ("Pl. COL Mem.") (Dkt. 32).) Defendant, meanwhile, argues that New Jersey law governs all claims. (Def. Suppl. Mem. re Choice of L. ("Def. COL Mem.") (Dkt. 4).)

1. Legal Standard

"Where jurisdiction is predicated on diversity of citizenship, a federal court must apply the choice-of-law rules of the forum state." Thea v. Kleinhandler, 807 F.3d 492, 497 (2d Cir.

2015) (citing Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 433 (2d Cir. 2012); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). "Where a choice of law clause is not dispositive, '[t]he first step . . . is to determine whether there is an actual conflict between the laws of the jurisdictions involved.'" Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y., 822 F.3d 620, 641 (2d Cir. 2016) (alterations in original) (quoting In re Allstate Ins. Co. (Stolarz), 613 N.E.2d 936, 937 (N.Y. 1993)). "[I]n the absence of any conflict between the laws of the two jurisdictions . . . , no choice-of-law analysis is required." O'Leary v. S & A Elec. Contracting Corp., 53 N.Y.S.3d 617, 619 (N.Y. App. Div. 2017) (citing J. Aron & Co. v. Chown, 647 N.Y.S.2d 8 (N.Y. App. Div. 1996)).

"If an actual conflict exists, New York applies '[t]he 'center of gravity' or 'grouping of contacts' choice of law theory.'" Fireman's Fund, 822 F.3d at 641 (quoting Stolarz, 613 N.E.2d at 939). "[T]he New York Court of Appeals has endorsed the following factors" as relevant for the "center of gravity" approach: "the places of negotiation and performance; the location of the subject matter; and the domicile or place of business of the contracting parties." Id. at 642 (internal quotation marks and citations omitted). If, with regard to an insurance contract, "the insured risk is scattered throughout multiple states, New York courts deem the risk to be located principally in one state," and use "the state of the insured's domicile . . . as a proxy for the principal location of the insured risk." Id. (alterations, internal quotation marks, and citations omitted).

"New York further recognizes that sometimes 'the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests, and therefore should be considered.' In such cases, a court 'may properly consider State interests to determine

12

whether to apply New York law.'" Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 152 (2d Cir. 2008) (quoting Stolarz, 613 N.E.2d at 939).

2. Analysis

Neither party has directed the court's attention to a choice-of-law provision in the Policy. The "center of gravity" approach favors the application of New Jersey law in this case. Plaintiff is a New Jersey corporation with its primary office in New Jersey. Plaintiff does business in multiple states, and so the principal location of the insured risk is deemed to be New Jersey, Plaintiff's domicile. No other state has a stronger pull on the center of gravity. Thus, the court's choice-of-law analysis for each issue concerning the Policy will proceed as follows: (1) if there is no conflict between New York and New Jersey law, the court will apply New York law;[5] (2) if there is a conflict, the court will apply New Jersey law pursuant to the "center of gravity" approach, unless a "strong governmental interest" favors the application of New York law.

**D. Analysis**

Neither party has cited contractual terms in the Policy governing the selection of counsel for purposes of defending against covered claims. The court must therefore rely on non-contract doctrines to resolve the pending cross-motions. Defendant's Rule 12(b)(6) motion is essentially a mirror image of Plaintiff's motion for summary judgment in terms of the legal arguments and proffered evidence. Because Defendant itself submitted multiple evidentiary exhibits, and because both parties rely on the same evidence in making their arguments, the court sees fit to apply Rule 12(d) and analyze Defendant's motion as a motion for summary judgment.[6] The

---

[5] Defendant argues that if "there is no conflict," there is "no overriding reason to apply to New York law," and so New Jersey law should be applied instead. (Def. Reply to Pl. COL Mem. (Dkt. 34).) Defendant's proposal is flatly foreclosed by long-established choice-of-law principles in New York, as explained above.

[6] In light of this characterization, the court need not consider Plaintiff's argument that Defendant's motion should be rejected on procedural grounds "since it relies entirely on documents and communications that were neither attached to the Complaint nor incorporated by reference." (Pl. Mem. in Supp. of Cross-Mot. (Dkt. 21) at 10.)

13

court grants Plaintiff's motion for partial summary judgment on the question of whether Plaintiff is entitled to select independent counsel in the Underlying Action. Defendant's motion is denied.

1. Punitive Damages and Conflicts of Interest

The court finds that Plaintiff's argument as to conflicts of interest would produce the same result whether analyzed under New York or New Jersey law. Therefore, under New York's choice-of-law principles, New York law will govern the dispute.

New York law clearly prohibits insurers from indemnifying punitive damages assessed against insured entities. Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 319 (N.Y. 1994) (discussing "New York's unambiguous policy against insurance coverage for punitive damages"). The New Jersey Supreme Court has not ruled on the issue. Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 245 n.3 (N.J. 2008) ("[T]here has never been a declaration by this Court or the Legislature that punitive damages are uninsurable."). However, at least two decision from the Appellate Division have followed the New York model of prohibiting coverage for punitive damages. See Fireman's Fund Ins. Co. v. Imbesi, 826 A.2d 735, 757 (N.J. Super. Ct. App. Div. 2003); Johnson & Johnson v. Aetna Cas. and Sur. Co., 667 A.2d 1087 (N.J. Super. Ct. App. Div. 1995) ("New Jersey sides with those jurisdictions which proscribe coverage for punitive damage liability because such a result offends public policy and frustrates the purposes of punitive damage awards."). Thus, the best available authority suggests that, under both New York and New Jersey law, punitive damages are not insurable as a matter of public policy.

Further, under the law of both states, the possibility of punitive damages creates a conflict of interest that entitles policyholders to independent counsel. See Ansonia Assocs. Ltd. P'shp. v. Pub. Serv. Mut. Ins. Co., 257 A.D.2d 84, 87 (N.Y. App. Div. 1999) (finding a "conflict of interest" based on the potential for punitive damages: the "defendant insurance companies face

no augmented financial risk by foregoing settlement and proceeding to trial," and so the insured "is forced to elect between exposure to potentially ruinous punitive damages by proceeding to trial and the loss of coverage for compensatory damages by entering into a compromise without the insurer's consent")[7]; Dieye v. Royal Blue Servs., Inc., 961 N.Y.S.2d 478, 480 (N.Y. App. Div. 2013) (finding that counsel "retained by the defendants' insurance company . . . would be subject to divided loyalties" in defending against claims for which "the insurance company has disclaimed coverage," and remanding for selection of unconflicted counsel (citing Prashker v. U.S. Guarantee Co., 1 N.Y.2d 584, 593 (N.Y. 1956)); Aquino v. State Farm Ins. Cos., 793 A.2d 824, 831-32 (N.J. Super. Ct. App. Div. 2002) (noting that certain claims against the insured involved punitive damages, which were not covered under the insurer's policy, and concluding that the "conflict [] necessitated separate counsel" on those claims).[8]

Defendant argues that the mere <u>possibility</u> of punitive damages means that any conflict of interest is hypothetical. (See Def. Mem. at 2 ("The mere fact that" the Abbott SAC seeks "punitive damages against 'all defendants' did not mean that such damages would or should or were likely to be awarded against Med-Plus.").) Defendant argues that Plaintiff has improperly "ask[ed] the Court to provide an advisory opinion on a potential scenario that may never be realized." (Id.) Defendant is mistaken. It would be illogical to delay appointing independent counsel until <u>after</u> the risk underlying a conflict of interest has fully materialized and harmed the client. A conflict of interest can insidiously infect professional decision making in myriad ways

---

[7] The reasoning in Ansonia directly refutes Defendant's argument that "Med-Plus and American Casualty have a complete unity of interest in ensuring that all claims asserted against Med-Plus are defeated." (Def. Mem. in Opp'n to Pl. Cross-Mot. & in Further Supp. of Def. Mot. ("Def. Opp'n") (Dkt. 24) at 15.)

[8] Defendant argues that Aquino is inapplicable because the insurer in that case "had issued a reservation of rights as to the [] counts" that involved the possibility of punitive damages, whereas Defendant "<u>waived</u> its reservation of rights months ago." (Def. Opp'n at 11; see also Def. Mem. at 5 ("[G]iven that American Casualty has agreed to be fully responsible for all damages, up to its $1 million policy limit, there is no question as to American Casualty's fidelity to Med-Plus.").) Defendant cannot, however, voluntarily waive an exclusion that is mandated as a matter of public policy.

15

over the course of a lawyer's representation, which is why lawyers are generally instructed either to decline conflicted representation or to obtain written informed consent from each affected client. See, e.g., N.Y. R. Prof'l Conduct r. 1.8 cmt.11 ("Third-party payers"—"such as [] liability insurance company[ies]"—"frequently have interests that may differ from those of the client. A lawyer is therefore prohibited from accepting or continuing such a representation unless the lawyer determines that there will be no interference with the lawyer's professional judgment and there is informed consent from the client.").

Conflicts of interest are best addressed prophylactically so as to avoid a challenging retrospective analysis of whether an attorney's conflict of interest had a material effect on the representation. Plaintiff has offered sufficient support for its claim that punitive damages are a legitimate possibility in the Underlying Action. (Pl. Reply in Further Supp. of Pl. Cross-Mot. at 5-6 (noting that punitive damages have previously been awarded in similar actions, and also that Abbott's success in securing preliminary injunctive relief is a sign of likely success on the merits).) That possibility means that Plaintiff and Defendant do not have complete unity of interests.

The court grants Plaintiff's request for a declaratory judgment that Plaintiff may select independent counsel in the Underlying Action based on the threat of punitive damages. This entitlement comes with the caveat that Plaintiff does not have a blanket right to counsel of its choosing for <u>all purposes</u> in the Underlying Action. Rather, the right is limited to issues that present a probable conflict of interest with the insurer. For example, should it become clear that certain claims in the Underlying Action are eligible for punitive damages while others are not, Plaintiff's right to independent counsel would be limited to the punitive-damage-eligible claims.

Similarly, if Abbott agreed not to seek punitive damages, Plaintiff would no longer have a right to independent counsel on that basis.

### 2. Defendant's Challenges to Plaintiff's Chosen Counsel

The court has concluded that Plaintiff is entitled to independent counsel, but it does not necessarily follow that Plaintiff is specifically entitled to the continued services of Stern & Schurin. Defendant challenges Stern & Schurin's eligibility, and also raises concerns about the method for calculating Plaintiff's defense costs. At this time, the court sees no reason to disqualify Stern & Schurin or to articulate a binding cost allocation formula.

Defendant argues, first, that it "has 'the right' to reject Med-Plus's counsel due to the acrimonious relationship caused by Med-Plus filing a declaratory judgment action," even after Defendant "had agreed to fully defend and indemnify Med-Plus up to its policy limit." (Def. Mem. at 7.) Defendant offers no binding authority in support of this "acrimonious relationship" theory, however. The court declines to disqualify Plaintiff's chosen counsel solely on the basis that they represented Plaintiff in the instant lawsuit. Plaintiff merely sought to secure a right that, as the court has determined, Plaintiff was legally entitled to exercise.

Defendant next objects to Stern & Schurin's representation on the grounds that the firm represent several defendants in the Underlying Action, some insured and some not. Defendant argues that it "has no obligation under its policy or otherwise to fund the defense of [Stern & Schurin's] other clients, who are not American Casualty insureds." (Def. Mem. in Opp'n to Pl. Cross-Mot. & in Further Supp. of Def. Mot. (Dkt. 24) at 19.) Defendant's concerns about the allocation of costs are not relevant at this time. True, the Complaint seeks "compensation for [] total reasonable defense costs" in the Underlying Action (Compl. ¶ 2), but Plaintiff's motion for partial summary judgment was limited to the issue of Plaintiff's asserted right to independent counsel. Plaintiff's motion did not address the calculation of payment, nor has Defendant

asserted a pertinent counterclaim. In any event, a fee dispute may well be unripe. The court is not convinced that it would be appropriate to adjudicate a fee dispute before the close of the underlying litigation.[9] Before the Underlying Action concludes, the parties may be able to reach an agreement as to the allocation of fees without the need for additional litigation.

Defendant further hypothesizes that Stern & Schurin may not have fulfilled its obligation under the New York Rules of Professional Conduct to secure written informed consent from all co-defendants represented by the firm in the Underlying Action. (Def. COL Mem. at 3.) Defendant offers no proof of this accusation, however, and "[c]onclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact."[10] Joseph, 473 F. App'x at 36 (alteration omitted) (quoting Shannon, 332 F.3d at 99). In addition, Defendant has not justified its attempt to assert rights that belong to Stern & Schurin's clients.

The court declines to disqualify Stern & Schurin from selection as Plaintiff's independent counsel in the Underlying Action. The court cautions, however, that this refusal to disqualify Stern & Schurin should not be construed as an affirmative declaration that that the firm is actually eligible.

## III. CONCLUSION

For the reasons stated above, Defendant's motion (Dkt. 19) is construed in part as a motion to dismiss and in part as a motion for summary judgment; the motion is DENIED in its

---

[9] As Defendant argued in its challenge to subject matter jurisdiction, "[i]f every insurer/defense counsel fee dispute, no matter how young and where the bills at issue have not even been presented, is deemed a justiciable controversy, the Court will be flooded with cases such as this one, which do not present a live, immediate controversy." (Def. Opp'n at 8 (citation omitted).) Defendant's jurisdictional challenge was misplaced because this case involves a threshold dispute over the duty to defend. However, Defendant's argument appropriately anticipated Defendant's own attempt to assert a premature fee dispute concerning the allocation of costs.

[10] Defendant requests that this court review "all of the retainer agreements for all clients in the [Underlying Action], all bills to those clients, all time sheets and proof of payment by all the clients" in order to assess the suitability of Plaintiff's chosen counsel. (Def. Opp'n at 20.) This request is beyond the scope of the current cross-motions, as discussed in the text.

entirety. The court GRANTS Plaintiff's cross-motion for partial summary judgment (Dkt. 20) and issues a declaratory judgment that Plaintiff is entitled to independent counsel in <u>Abbott Labs. v. Adelphia Supply USA</u>, No. 15-CV-5826 (CBA) (LB) insofar as that action involves claims for punitive damages.

Within 30 days of entry of this Order, the parties are DIRECTED to jointly submit a status report that enumerates all outstanding issues in this action. The parties shall consider whether Plaintiff has any ripe claims that have been neither resolved nor mooted.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
August 3, 2017

NICHOLAS G. GARAUFIS
United States District Judge